IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Elsa Olivo,                                      :
                                                 :
                   Petitioner                    :
                                                 :
          v.                                     : No. 1000 C.D. 2018
                                                 : Submitted: December 21, 2018
Workers' Compensation Appeal                     :
Board (M&T Bank and Hartford                     :
Insurance Company of the Southeast),             :
                                                 :
                   Respondents                   :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                     FILED:  August 9, 2019


          Elsa Olivo (Claimant) petitions for review of the June 21, 2018 order
of the Workers' Compensation Appeal Board (Board) that affirmed the decision of
a workers' compensation judge (WCJ) denying Claimant's claim petition.  We
affirm.

          On March 29, 2016, Claimant filed a claim petition, alleging that she
sustained a work-related injury in the nature of bilateral carpal tunnel syndrome
(CTS) during the course of her employment with M&T Bank Corporation
(Employer) that resulted in total disability from March 18, 2016, and ongoing.
Employer filed a timely answer denying all of the material allegations, and the
matter was assigned to a WCJ.

Claimant testified by way of deposition on May 19, 2016, and before the WCJ on January 18, 2017. Claimant stated that she had worked for Employer as a teller for 37.5 hours per week since approximately 2008. She said that her job duties consisted of handling customer service issues, depositing checks, and counting money once a day to settle out her drawer. Claimant estimated that she spent about 25% of her time counting money; she acknowledged that she occasionally used a counting machine to assist her with counting bulk money. Reproduced Record (R.R.) at 13a-14a, 18a-19a; WCJ's Findings of Fact (F.F.) Nos. 4a, 4b.

Claimant testified that she began experiencing pain in both hands, wrists, and upper forearms in 2012. Claimant explained that she began having cramps in her fingers while counting money at work, which then moved to her wrists and upper forearms. Additionally, Claimant reported tingling in her fingertips and numbness in her hands at night. R.R. at 13a-14a; F.F. No. 4c.

Claimant said that when her symptoms began, she mentioned them to a co-worker but did not report the problem to her branch manager, Joan Rose, until 2015. Claimant stated that when she told Ms. Rose that she was having cramping and pain in her hands, she received no response. According to Claimant, she spoke to Ms. Rose three or four times about her symptoms and her belief that they were work-related. R.R. at 14a-15a; F.F. No. 4d.

In November 2015, Claimant told Ms. Rose that she was seeking treatment for her symptoms with her primary care provider. Claimant said that she sought medical attention in November 2015 because her condition worsened. Claimant's primary care provider gave her braces for her hands, and she used the left brace while working. Claimant testified that her primary care physician

2

referred her to Benjamin Gray, M.D., a board-eligible orthopedic surgeon who specializes in hand, wrist, and elbow surgery. R.R. at 15a-16a, 28a, 129a; F.F. Nos. 4e, 5m.

Claimant testified that Dr. Gray performed carpal tunnel release surgery on both hands and that she experienced temporary relief from her symptoms after each surgery. However, Claimant stated that the pain and numbness returned and, as a result, she needed help to perform daily activities. Claimant said that she continues to have cramping, pain, and numbness in her hands. Claimant did not believe that there had been any change in the condition of either hand since March 2016. Claimant testified that she was still having excruciating pain. Claimant stated that she did not feel capable of performing her job as a teller or work in any other capacity. Employer terminated Claimant's employment on August 31, 2016.[1] R.R. at 116a-20a, 123a-26a; F.F. Nos. 5e-h, 5j.

Claimant acknowledged that Dr. Gray had released her to return to her pre-injury job without restrictions, but she did not agree with Dr. Gray's assessment. During her January 18, 2017 testimony, Claimant stated that she had no future appointments scheduled with Dr. Gray. Claimant testified that she continues to use prescribed braces for her elbows, but she admitted that the hand braces she uses were not prescribed and were obtained independently from a pharmacy. R.R. at 123a-24a, 126a, 127a; F.F. Nos. 5j-l.

Claimant also presented the deposition testimony of Dr. Gray. Dr. Gray began treating Claimant in February 2016. During his initial physical examination, Dr. Gray administered both Tinel and Durkan tests, which were

---

[1] Because the WCJ determined that Claimant failed to establish a work-related injury, the termination of Claimant's employment is not a basis for an award of wage loss benefits.

3

positive. Based on those positive test results, Dr. Gray preliminarily diagnosed Claimant with CTS on the right and left hands with a potential diagnosis of cubital tunnel syndrome.[2] Dr. Gray then ordered an electromyogram and nerve conduction study, which confirmed that Claimant had CTS.

Claimant told Dr. Gray that her symptoms first began about eight years earlier and that she did not seek treatment until November 2015, when her symptoms became more severe, affecting her sleep and job performance. Dr. Gray said that Claimant described her job duties as primarily involving counting money, which he believed further exacerbated her symptoms. Dr. Gray also said that Claimant reported that her symptoms worsened at work, particularly when she was counting money. R.R. at 29a-30a; F.F. Nos. 6a-e.

Dr. Gray testified that, based on Claimant's reported history, "it seemed as though her job was exacerbating [her carpal tunnel syndrome]." R.R. at 30a; F.F. No. 6e. Relying on Claimant's statements that she counted and sorted money for the majority of her work day, Dr. Gray testified to a reasonable degree of medical certainty that Claimant's job "likely exacerbated her symptoms." *Id.* When advised of Claimant's testimony that she counted and sorted money for only 25% of the work day, Dr. Gray stated, "Again, it's still happening every day that

---

[2] CTS is a condition of nerve entrapment caused by the narrowing of the tunnel surrounding the tissues inside the bones of the wrist, inflaming the median nerve and surrounding tissues. The median nerve gives feeling to your thumb, index, middle, and ring fingers.
https://www.hopkinsmedicine.org/neurology_neurosurgery/centers_clinics/peripheral_nerve_surgery/conditions/carpal-tunnel-syndrome.html (last visited June 21, 2019).

Cubital tunnel syndrome occurs when the ulnar nerve, which passes through the cubital tunnel (a tunnel of muscle, ligament, and bone) on the inside of the elbow, is injured and becomes inflamed, swollen, and irritated. https://www.hopkinsmedicine.org/health/conditions-and-diseases/cubital-tunnel-syndrome (last visited June 21, 2019).

she's at work. So it's hard to say how much that would change my opinion in terms of – I think it's – it still could potentially exacerbate her symptoms." R.R. at 35a; F.F. No. 6e. During cross-examination, Dr. Gray stated that he did not know whether Claimant had engaged in other activities within the last eight years that could have exacerbated her symptoms. R.R. at 34a; F.F. No. 6k.

Because Claimant's symptoms had not improved with bracing, Dr. Gray performed carpal tunnel release surgery for her left hand on March 18, 2016, and he provided her with a disability note releasing her from work for two months. On May 20, 2016, Dr. Gray performed carpal tunnel release surgery for Claimant's right hand and again provided Claimant with a disability note releasing her from work for two months. Dr. Gray stated that he saw Claimant for follow-up appointments in June and September 2016. In June 2016, Claimant reported that the symptoms in her long, index, and thumb fingers had improved, but she continued to have tingling and numbness in her small and ring fingers. Dr. Gray concluded that Claimant's CTS had resolved and that the tingling of the small and ring fingers were potentially symptomatic of cubital tunnel syndrome. Dr. Gray testified that, as of his September 15, 2016 evaluation, Claimant could resume her pre-injury work without restriction. Dr. Gray did not believe that Claimant's CTS would recur if Claimant resumed her pre-injury work. R.R. at 31a-33a; F.F. Nos. 6f, 6g, 6i, 6l.

Employer presented the deposition testimony of Stephanie Sweet, M.D., a board-certified orthopedic surgeon, who holds an additional certification in hand surgery and regularly performs carpel tunnel release surgery. Dr. Sweet performed an independent medical evaluation of Claimant on August 30, 2016. Dr. Sweet took Claimant's medical history, reviewed her medical records, and

conducted a physical examination of Claimant. Claimant reported to Dr. Sweet that she began having problematic symptoms in both hands, including pain, numbness, and tingling, in approximately November 2015.

Claimant told Dr. Sweet that after her surgeries she initially had relief of her symptoms, but she later developed shooting pain, cramping, and numbness in both hands. Claimant advised Dr. Sweet that, as a result of these symptoms, she was not able to drive, open jars, cook, or clean. Dr. Sweet noted that Claimant was wearing a brace on her right hand and a soft support on her left hand. R.R. at 49a-60a; F.F. Nos. 7a-c, 7i.

Dr. Sweet testified that during her physical examination, Claimant magnified her symptoms, citing some facial grimacing. She said that when Claimant was distracted, her range of motion and raw data were better than when Claimant was actively tested. Based on her evaluation, Dr. Sweet determined that Claimant had previously suffered from bilateral CTS, but she disagreed that the condition was caused by Claimant's work duties. R.R. at 54a, 60a; F.F. Nos. 7d, 7f.

Dr. Sweet reviewed Claimant's job description and explained that, "for something to be deemed work-related carpal tunnel it would have to be something that involves a high force, [high] torque vibration situation . . . bank teller not being one of them." R.R. at 60a-61a; F.F. No. 7f. During cross-examination, Dr. Sweet noted that CTS may be caused by various factors, including being female and over 40 years old. Overall, Dr. Sweet concluded that Claimant was fully recovered in both hands and, therefore, she could return to her former position without restrictions. R.R. at 61a-62a, 79a-80a; F.F. Nos. 7g, 7j.

6

The WCJ rejected Claimant's testimony as neither credible nor persuasive to establish that she suffered a work-related injury that rendered her totally disabled from performing her work duties on and after March 18, 2016. The WCJ found Claimant's testimony to be inconsistent with the testimony of Dr. Gray and Dr. Sweet regarding her post-surgical work capacity as well as the resolution of her symptoms after the surgeries. Specifically, the WCJ noted that in contrast to Claimant's testimony, both Dr. Gray and Dr. Sweet agreed that Claimant could return to her pre-injury work duties without restriction. The WCJ also found Claimant's testimony to be inconsistent with her representations to Dr. Gray concerning the nature of her work duties. The WCJ noted that Dr. Gray was not aware that Claimant counted and sorted money for only 25% of the work day, as she had told him that she had spent most of her work day counting and sorting money. R.R. at 30a, 33a, 35a, 62a, 116a-17a, 123a-24a; F.F. Nos. 5e, 5j, 6e, 6i, 6k, 7g, 11a.

The WCJ also found the testimony and opinions of Dr. Sweet to be more credible and persuasive than the testimony and opinions of Dr. Gray, where their testimony and opinions differed. The WCJ specifically credited Dr. Sweet's opinion that Claimant's work duties as a bank teller did not cause or exacerbate Claimant's bilateral CTS. The WCJ found that Dr. Gray's testimony and opinions were inconsistent and equivocal concerning the cause of Claimant's bilateral CTS and whether Claimant had cubital tunnel syndrome. The WCJ further found that Dr. Gray based his opinion on inaccurate information provided by Claimant in 2016; although Claimant told Dr. Gray her symptoms began approximately eight years earlier, her testimony was that she began experiencing symptoms four years earlier. Additionally, the WCJ found that Dr. Sweet is board certified and has

7

superior qualifications and more experience than Dr. Gray. R.R. at 14a, 28a, 29a, 35a, 36a, 49a-51a, 60a-61a, 79a-82a; F.F. Nos. 4c-d, 11b.

Based on those credibility determinations, the WCJ found that Claimant's bilateral CTS was not caused or exacerbated by her work duties. The WCJ concluded that Claimant had not met her burden of proving a compensable work injury and denied Claimant's claim petition. F.F. No. 11c.

Claimant appealed to the Board, arguing that the WCJ erred in concluding that she did not meet her burden of proving that she sustained a work-related injury. Claimant asserted that: 1) the WCJ erred in rejecting her testimony and the opinion of Dr. Gray that the CTS was work-related; 2) the WCJ erred in determining that Claimant's testimony was inconsistent; and 3) the WCJ erred in crediting Dr. Sweet's medical opinion because Dr. Sweet did not offer an explanation for Claimant's CTS. The Board affirmed, and Claimant now petitions this Court for review.[3]

Claimant argues that the WCJ erred in crediting the testimony and opinions of Dr. Sweet instead of her testimony and Dr. Gray's opinion that her CTS was work-related. However, determinations of witness credibility and evidentiary weight are the exclusive prerogative of the WCJ. *Vols v. Workmen's Compensation Appeal Board (Alpern, Inc.)*, 637 A.2d 711, 714 (Pa. Cmwlth. 1994). The WCJ is free to accept or reject the testimony of any witness, including

---

[3] Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are support by substantial evidence. *Bloom v. Workmen's Compensation Appeal Board (Keystone Pretzel Bakery)*, 677 A.2d 1314, 1318 n.4 (Pa. Cmwlth. 1996). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support the conclusions reached. *Bethenergy Mines v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434, 436 (Pa. 1992).

medical witnesses, in whole or in part, and such findings may not be disturbed on appeal. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995). Accordingly, the WCJ properly exercised her authority to credit and rely upon Dr. Sweet's testimony.

Claimant also argues that the WCJ erred in determining that her testimony was inconsistent. Our review of the record confirms that the WCJ accurately characterized Claimant's testimony. For example, Claimant testified on May 19, 2016, that she informed Ms. Rose of pain and cramping in her hands about a year earlier. On January 18, 2017, Claimant testified that she mentioned these problems to Ms. Rose on a regular basis, possibly as early as May 2014, and that she specifically informed Ms. Rose that the repetitive motion of counting money caused her hands to hurt. Whereas Claimant told Dr. Gray that her work primarily involved counting and sorting money, she testified that only 25% of her work time was spent on those activities. R.R. at 15a, 127a-29a; F.F. Nos. 4a, 4b, 4d, 5m, 6a-6e. The WCJ did not err in acknowledging these inconsistencies.

Claimant further asserts that the WCJ erred in crediting Dr. Sweet's medical opinion because Dr. Sweet did not offer an alternative explanation for Claimant's bilateral CTS. However, in a claim proceeding, the employer is not required to offer an alternative explanation for the claimant's injury; instead, the claimant has the burden of proving all elements necessary to support an award, including the existence of a work-related injury resulting in a disability. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). Additionally, where the causal relationship between the work incident and the disability is not obvious, the claimant must establish that relationship by way of unequivocal medical evidence. *Jeannette District Memorial Hospital v.*

9

*Workmen's Compensation Appeal Board (Mesich)*, 668 A.2d 249, 251 (Pa. Cmwlth. 1995).

Because the WCJ rejected Claimant's testimony and the testimony of her medical witness, Claimant failed to meet her burden of proof in this claim proceeding, and the Board properly affirmed the WCJ's decision. Accordingly, we affirm the Board's order.

_____
MICHAEL H. WOJCIK, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Elsa Olivo, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1000 C.D. 2018 |
| | : | |
| Workers' Compensation Appeal | : | |
| Board (M&T Bank and Hartford | : | |
| Insurance Company of the Southeast), | : | |
| | : | |
| Respondents | : | |

O R D E R

AND NOW, this 9th day of August, 2019, the order of the Workers' Compensation Appeal Board, dated June 21, 2018, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge